UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
DCH REGIONAL MEDICAL CENTER, )
                                                    )
      Plaintiff,             )
                                                    )
      v.                 )     No. 16-cv-0212 (KBJ)
                                                    )
THOMAS E. PRICE, *in his capacity as*  )
*Secretary of the United States*            )
*Department of Health and Human*  )
*Services*,                                        )
                                                   )
      Defendant.       )
                                                 )

## **MEMORANDUM OPINION**

On April 13, 2016, this Court granted Defendant's uncontested motion to stay the proceedings in the instant Medicare case pending the D.C. Circuit's resolution of an appeal in *Florida Health Sciences Center, Inc. v. Secretary of Health and Human Services* ("*Florida Health I*"), 89 F. Supp. 3d 121 (D.D.C. 2015). (*See* Def.'s Mot. to Stay Proceedings, ECF No. 11, at 1–2; Min. Order of Apr. 13, 2016.)[1] The district court in *Florida Health I* had "held that 42 U.S.C. § 1395ww(r)(3) bars judicial review of the Secretary's calculation of" a figure "known as 'Factor Three,' that is used to determine the amount of a hospital's disproportionate share payments under the federal Medicare program[,]" and Defendant here maintained that "[t]he same threshold question is present in this case[.]" (Def.'s Mot. to Stay Proceedings at 1–2.)

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

On July 26, 2016, the D.C. Circuit issued an opinion that affirmed the district court's holding. *See Florida Health Scis. Ctr., Inc. v. Sec'y of Health and Human Servs.* ("*Florida Health II*"), 830 F.3d 515 (D.C. Cir. 2016). Specifically, in *Florida Health II*, the D.C. Circuit concluded that section 1395ww(r)(3)'s "bar on judicial review of the Secretary's *estimate*" of a hospital's amount of uncompensated care likewise "precludes review of the *underlying data*" upon which the Secretary relies in reaching that estimate, because the data "are inextricably intertwined with the Secretary's estimate of uncompensated care[.]" *Id.* at 517, 521 (emphasis added); *see also id.* at 521 (explaining that "[t]he dispositive issue is whether the challenged data are inextricably intertwined with an action that all agree *is* shielded from review, regardless of where that action lies in the agency's decision tree" (emphasis in original)). The D.C. Circuit further noted that "the data are the entire basis for" the Secretary's estimate of uncompensated care, and therefore, "[a] challenge to the data would eviscerate the bar on judicial review" of the Secretary's estimate. *Id.* at 519 (internal quotation marks and citation omitted).

For the reasons explained below, this Court concludes that the D.C. Circuit's reasoning in *Florida Health II* compels the rejection of the instant challenge to the Secretary's estimate-generating methodology. (*See* Compl. ECF No. 1, at 1.) Consequently, Defendant's motion to dismiss the complaint must be **GRANTED**, and this case must be **DISMISSED**. A separate Order that is consistent with this Memorandum Opinion shall follow.

DISCUSSION

In its complaint, Plaintiff DCH Regional Medical Center ("DCH") "challenge[s] the methodology adopted and employed by [former] Defendant Sylvia Burwell, in her capacity as [former] Secretary of the United States Department of Health and Human Services[,]" whereby "the calculation [the Secretary] used to determine the disproportionate share payments owed to qualifying hospitals participating in Medicare was restricted, in part, to data associated with a single provider number[.]" (Compl., ECF No. 1, at 1; *see also id.* (explaining that, when two hospitals merge during the relevant time period, the challenged methodology results in an understated estimate of the surviving hospital's disproportionate share payment); *id.* at 10 ("The problem lies in her restriction that data (specifically, Medicaid and SSI days) only be collected from a single hospital's" provider number (emphasis omitted)).)[2] However, this Court discerns no meaningful difference between the so-called methodological challenge that DCH raises in this case (*see id.* at 15 (characterizing the Secretary's methodology as arbitrary and capricious insofar is it considers "only data associated with a single hospital's" provider number and thus does "not use 'appropriate data'")), and the data-based challenge that the D.C. Circuit considered in *Florida Health II*, *see* 830 F.3d at 518 ("Tampa General seeks to challenge the Secretary's refusal to use the most recent available data to estimate the hospital's 2014 DSH payment."). That is, *both* the underlying data *and* the methodology the Secretary employs when analyzing that data are "'indispensable' and 'integral' to, and 'inextricably intertwined' with[]" the

---

[2] Thomas Price has been automatically substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

3

Secretary's estimate" of each hospital's amount of uncompensated care, *id.* at 519, because the estimate is the figure that the Secretary generates by evaluating the underlying data in conjunction with a defined methodology. *Cf. Florida Health I*, 89 F. Supp. 3d at 132 (explaining that, while "Congress did not specifically prohibit review of the methodology used to calculate the 'estimated' amount of hospitals' uncompensated care in factor three, and it did not expressly bar review of the 'appropriate data' upon which the estimate would be based, . . . it did plainly and broadly prohibit any legal challenge to the estimate itself"). Thus, an argument that attempts to distinguish between data and methodology vis-à-vis the estimate is little more than an exercise in semantics, and it can fare no better than the challenge to the Secretary's choice of data that the D.C. Circuit rejected on jurisdictional grounds in *Florida Health II*.

To the extent that DCH attempts to reframe its challenge as a procedural objection to the general rule that led to the Secretary's estimate (*see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 15, at 13–15), this Court is unpersuaded. To be sure, "the D.C. Circuit recently stated that, where judicial review of [an agency's] decision is barred, judicial review is still appropriate over general rules leading to that decision." (*Id.* at 13 (citing *Florida Health II*, 830 F.3d at 521–22).) But the *Florida Health II* court also "clarified that judicial review is *not* permitted 'when a procedure is challenged solely in order to reverse an individual . . . decision' that [a court] otherwise cannot review." *Florida Health II*, 830 F.3d at 521 (second alteration and emphasis added) (quoting *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d

400, 405 (D.C. Cir. 2005)). And even a cursory reading of DCH's complaint reveals that its suit does just that—*i.e.*, its aim is not to "present[] a challenge to a general rule applied by the Secretary" (Pl.'s Opp'n at 15); rather, DCH "is simply trying to undo the Secretary's estimate of the hospital's uncompensated care by recasting its challenge to the Secretary's choice of [methodology] as an attack on the general rules leading to her estimate[,]" *Florida Health II*, 830 F.3d at 522.

Notably, DCH struggles mightily to characterize its complaint as a procedural challenge. To this end, it points to allegations in the complaint that charge the Secretary with failing to "properly consider or respond to comments during the rule-making process regarding the inherent flaw in her methodology[.]" (Compl. at 15; *see also* Pl.'s Opp'n at 7, 15 n.1.) But, the indisputable gravamen of DCH's complaint is that the Secretary improperly calculated the amount of uncompensated care *for DCH*—which merged with Northport Regional Medical Center ("Northport") on May 1, 2011 (*see* Compl. at 11)—by basing the agency's calculation on data associated solely with DCH, rather than data associated with both DCH and Northport. (*See id.* ("[U]nder the Secretary's flawed methodology, [the agency's] Factor 3 calculation for DCH disregarded seven (7) months of relevant data associated with Northport's [provider number], resulting in a substantial reduction in DCH's reimbursement.").) And one need look no further than DCH's own request for relief to see clearly that what is at stake in this action is DCH's requested individualized recalculation of the uncompensated care figure rather than any reformulation of the agency's general rule; in fact, the complaint seeks neither invalidation of any agency rule nor a remand so that the Secretary may better explain her methodology. (*See id.* at 16.) Instead, the

complaint requests that this Court "[v]acate the Secretary's Fiscal Year 2014 Factor 3 calculation *for Plaintiff*" and remand the case to the Secretary "with an order compelling her to recalculate the Fiscal Year 2014 disproportionate share adjustment *owed to Plaintiff*[.]" (*Id.* (emphasis added).) Thus, just as in *Florida Health II*, DCH's belated contention that the complaint presents an "attack on the general rules leading to [the Secretary's] estimate" is actually a misguided attempt to "recast[]" the complaint's core challenge to the methodology that the Secretary used to calculate the estimate, 830 F.3d at 522, and as such, it must be rejected.

Nor can this Court accept DCH's argument that its legal "claim includes a challenge to [the Secretary's] *ultra vires* action[,]" and thus this Court retains jurisdiction over its complaint. (Pl.'s Opp'n at 17 (citing *COMSAT v. FCC*, 114 F.3d 223, 224 (D.C. Cir. 1997)).) A challenge to agency action on the ground that it is *ultra vires* requires a plaintiff to establish "a patent violation of agency authority[,]" *Florida Health II*, 830 F.3d at 522 (internal quotation marks and citation omitted); *see also id.* ("A violation is 'patent' if it is '[o]bvious' or 'apparent.'" (citation omitted)), and under the circumstances presented here, DCH has demonstrated no such thing. The Secretary's choice of the methodology to be applied to the data when generating the sacred estimate is not beyond the terms of the statute, which unquestionably gives the Secretary wide latitude to formulate the estimate figure. Moreover, in the merger context, it is far from apparent that it was inappropriate for the Secretary to restrict the underlying data to a single hospital's provider number, and to decline to consider the provider numbers associated with both the acquired and surviving hospital. *See* 42 U.S.C. § 1395ww(r)(2)(C)(i) (directing that the Secretary's estimate of "the amount of

uncompensated care" for a hospital be "based on appropriate data"); (Compl. at 12 (noting that the Secretary justified the data restriction by characterizing it as "consistent with the treatment of other IPPS payment factors," because "[d]ata associated with a [provider number] that is no longer in use are not used to determine [other] IPPS hospital payments under the surviving" provider number)); *see also Florida Health II*, 830 F.3d at 522. Consequently, DCH's *ultra vires* argument, too, is unavailing.

## CONCLUSION

It is clear to this Court that DCH's challenge to the methodology that the Secretary used to calculate the estimate at issue is "inextricably intertwined with the Secretary's estimate of uncompensated care," *Florida Health II*, 830 F.3d at 521, and therefore, per the D.C. Circuit's holding in *Florida Health II*, this Court lacks jurisdiction to hear this case. Accordingly, as set forth in the accompanying Order, Defendant's motion to dismiss is **GRANTED**, and this case will be **DISMISSED** in its entirety.

DATE: July 6, 2017                    *Ketanji Brown Jackson*
                                       KETANJI BROWN JACKSON
                                       United States District Judge